**In re Joseph T. SEVITSKI, Jr.**

**Joseph Q. ADAMS, Trustee, Plaintiff,**

**v.**

**Michael PUGLIESE, Regina Pugliese, Joan Pugliese, Peter Pugliese, Leslie Rudes, Denise Gallant and Luis Colondres, Defendants.**

**Bankruptcy No. 92–00595–W.**
**Adv. No. 92–0143–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 24, 1993.

Sidney K. Swinson, Tulsa, OK, for plaintiff.

Timothy Kline, Oklahoma City, OK, for defendants.

ORDER
GRANTING IN PART
"TRUSTEE'S MOTION FOR SUMMARY
JUDGMENT"
AND
DENYING
DEFENDANTS' "MOTION FOR SUM-
MARY JUDGMENT ..."

MICKEY DAN WILSON, Chief Judge.

In this adversary proceeding under 11 U.S.C. § 547, both plaintiff and defendants move for summary judgment. Upon consideration of the record herein, the Court determines, concludes and orders as follows.

Plaintiff is the Trustee of the above-styled case under 11 U.S.C. Chapter 7, hereinafter referred to as "the Trustee". Defendants are seven individuals, some of whom are surnamed Pugliese, and all of whom are hereinafter referred to collectively as "Pugliese."

The record in this case is complicated by Pugliese's second amended answer. Said document denies certain matters which were admitted in Pugliese's previous answers, on the strength of which admissions the Trustee rested his motion for summary judgment; and also denies certain matters, which Pugliese now admits in his own motion for summary judgment. Despite these complications, the Court believes that the following facts are not seriously disputed, and finds them to be substantially uncontroverted pursuant to F.R.Civ.P. 56(d) adopted by F.R.B.P. 7056. The Court states separately therefrom its conclusions of law.

## SPECIFICATION OF UNDISPUTED FACTS

On April 16, 1991, Pugliese sued Joseph T. Sevitski, Jr. ("Sevitski"), Sevitski and Associates, Inc. ("Sevitski Inc."), Sevitski and Associates Ltd. ("Sevitski Ltd."), Welcome Oil Corporation ("Welcome"), Tallgrass Petroleum Corporation ("Tallgrass"), Charles Dugger ("Dugger") and Mik Chester ("Chester") in the United States District Court for the Northern District of Oklahoma ("the District Court"). Sevitski was an officer of Sevitski Inc. and Tallgrass. This lawsuit is hereinafter referred to as "the District Court action;" and defendants therein are hereinafter sometimes referred to as "the District Court defendants." Pugliese sued all of the District Court defendants for securities fraud and common law fraud. Pugliese also sued two of them, Sevitski and Sevitski Inc., for breach of contract.

On August 2, 1991, the District Court granted judgment by default on Pugliese's counts for securities fraud and common law fraud against Sevitski, Sevitski Inc., Sevitski Ltd., and Dugger. The District Court did not grant such judgment against Tallgrass, because Tallgrass was then in bankruptcy. On the same date, the District Court also granted judgment by default on Pugliese's count for breach of contract against Sevitski and Sevitski Inc. The District Court granted its "... judgment ... [a]gainst all ... defendants, jointly and severally, and in favor of the several plaintiffs ...," Trustee's motion ex. B. The judgment specified monetary amounts which need not be recited here, save to note that the awards for the securities fraud count and the fraud count were identical as to all plaintiffs.

Between August 6 and August 12, 1991, Pugliese filed Affidavits of Judgment in the counties of Coal, Washington, Okmulgee, Rogers, and Mayes, all in the State of Oklahoma. By so doing, Pugliese perfected judgment liens upon any real property of the District Court defendants located in those counties.

One of Pugliese's judgment liens attached to Sevitski's previously unencumbered real property in Mayes County, near Pryor, Oklahoma ("the Pryor property"). For purposes of this opinion, the Court presumes that another lien attached to Sevitski Inc.'s previously unencumbered interest in the Chastain–Hissom Leasehold and Gas Tap in Okmulgee County, Oklahoma ("the Gas Tap").

Although Pugliese did perfect these judgment liens, Pugliese has never been paid any money or received any other prop-

erty of value in satisfaction of the judgment in the District Court action.

On February 14, 1992, a petition for involuntary relief against Sevitski under 11 U.S.C. Chapter 7 was filed in this Court. An order for relief was entered on March 5, 1992; and the Trustee was appointed to take charge of this bankruptcy estate.

With permission of this Court, the Trustee sold the Pryor property for $40,000.00, and sold the Gas Tap for $65,000.00, both free and clear of liens or other interests, but without prejudice to any rights Pugliese might have in and to the proceeds. The Trustee now holds those proceeds in escrow, pending the outcome of this adversary proceeding.

Any conclusions of law which ought more properly to be specifications of undisputed facts are adopted and incorporated herein by reference.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), 11 U.S.C. §§ 547, 550.

The Trustee brings this complaint under 11 U.S.C. § 547(b), which provides for the avoidance of preferential transfers, and § 550(a), which provides for the recovery of avoided transfers. § 547(b) provides as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 550(a) provides as follows:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

No affirmative defenses are raised under § 547(c), nor any exceptions under other subdivisions of § 550(b). This dispute concerns the terms of §§ 547(b), 550(a) alone.

§ 547(b)(4)(B) refers to an "insider." This term is defined by 11 U.S.C. § 101(31). Pugliese's second amended answer denies that any of the District Court defendants are insiders of Sevitski, ans. ¶ 2. But in moving for summary judgment, Pugliese admits that "One or more of the [District Court] Defendants are insiders of Sevitski, as defined by 11 U.S.C. § 101(3[1] )," Pugliese's brief p. 3 ¶ 5. The Court accepts Pugliese's admission, and determines that one or more of the District Court defendants are insiders of Sevitski.

§ 547(b)(3) requires that a debtor be insolvent. § 547(f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding" bankruptcy. The present action concerns events which occurred more than 90 days before bankruptcy; so the presumption of § 547(f) does not apply here. The Trustee did move for summary judgment on insolvency among other elements of § 547(b); but when the Trustee drew his motion for summary judgment, Pugliese admitted insolvency. In his latest amended answer, Pugliese for the first time denies insolven-

cy. The Trustee concedes that he cannot now expect summary judgment on insolvency under § 547(b)(3); but he asks the Court to grant him summary judgment on all the other elements of § 547(b).

§ 547(b)(1) requires that a transfer be "to or for the benefit of a creditor." There is no doubt that Pugliese received a benefit, and is a creditor. The Trustee proposes that the Sevitski insiders received a benefit, because Pugliese's lien on Sevitski's property will tend to cause the joint and several liability of all the District Court defendants to be satisfied by Sevitski alone, letting Sevitski's insiders "off the hook." The Trustee proposes that the Sevitski insiders are creditors, because if they were forced to satisfy Pugliese's judgment themselves, they would have claims for contribution over against Sevitski's estate. Pugliese responds that Sevitski's insiders received no benefit and are not creditors of Sevitski, because one of Pugliese's counts against the District Court defendants was based on the common-law tort of fraud; and under Oklahoma law, specifically 12 O.S. § 832(C), the joint perpetrators of intentional torts have no rights of contribution against each other. The Trustee replies that only one of Pugliese's three counts was based on common-law fraud; the others were based on statutory securities fraud and breach of contract; Pugliese got judgment on all three counts; the judgment for common-law fraud was duplicated by the judgment for securities fraud, and supplemented by the judgment for breach of contract; and there are rights of contribution under securities fraud and breach of contract, even if not under common-law fraud. The Court finds the Trustee's argument persuasive. Rights of contribution exist, even if not under all counts of Pugliese's action. Hence the Sevitski insiders did receive a benefit, and are creditors of Sevitski and of Sevitski's bankruptcy estate.

With these preliminary matters disposed of, the Court proceeds to the main issue. This involves, not just one or another technical detail within § 547(b), but the interpretation and application of the statute as a whole, with special regard for said statute's fundamental purpose and intent.

Bankruptcy's fundamental purpose has always been to achieve greater equality of treatment among creditors of an insolvent debtor than could be managed under ordinary non-bankruptcy law. Relieving debtors from creditors is merely a recent addition to the ancient objective of relieving creditors from each other. In its efforts to achieve equal treatment among creditors, bankruptcy faces two main antagonists: the secured creditor, whose security interest gives him a prior legal claim on assets of the bankruptcy estate; and the preferred creditor, who takes advantage of circumstances to get his debt paid while other creditors, of equal legal right, go unpaid.

This Court has previously reviewed the history and policy of preference-avoidance actions in *In re Hancock*, 137 B.R. 835, 837–838 (B.C., N.D.Okl.1992). A restatement is in order here.

The preference-avoidance problem arises because debtors often enter economic insolvency some time before they enter formal legal bankruptcy. During this interval, a debtor's available assets may be used up to pay some debts in full, while other debts are left unpaid and (because assets have been depleted) unpayable. Some of these transfers may be voluntary, by debtor to his favorite creditors, e.g. relatives, officers, and other "insiders." Other transfers may be forced by creditors who "race to the courthouse" to legally dismember the debtor, at the expense of other creditors who are less diligent or more tolerant or simply unlucky. By undoing such transfers, the insolvent estate is in some degree replenished; and its reconstituted value is re-distributed among creditors as a whole. Thus creditor gains and losses are spread evenly instead of preferentially; and the harmful effect of insolvency on creditors as a group is in some degree mitigated.

This process is not widely understood, and has not been well administered.

The one dominant historical ritual in twentieth century American preference law has been for Congress to enact a

new and supposedly clear and broad preference rule, and for judges then to ignore or shamelessly manipulate statutory rules to preserve transactions against a preference attack. Robert Weisberg, *Commercial Morality, the Merchant Character, and the History of the Voidable Preference*, 39 STANFORD L.REV. 3, 11 (No. 3, Nov. 1986). Some courts misperceive preference actions as windfalls for *debtors*, and fail to realize that the beneficiaries of preference actions are not debtors, but other creditors. See e.g. *In re Busenlehner*, 918 F.2d 928, 931 (11th Cir.1990, reh. den. 1991), refusing to avoid a transfer because *"Debtors* should not be given the ability to surprise and upset established commercial practices by filing for bankruptcy and avoiding this otherwise acceptable security interest" (emphasis added). Other courts permit avoidance only of those transfers which were created by deliberate overreaching, and fail to realize that the goal of preference law is equality of treatment, not purity of heart. See e.g. *In re Busenlehner*, supra, refusing to "surprise and upset established commercial practices [by] avoiding this otherwise acceptable security interest;" and see Weisberg, supra, for extended treatment of this point. Still other courts balk at the harsh operation of preference laws, which may inflict a severe loss on one preferred creditor in order "to eke out only a small dividend to general creditors", McLaughlin, *Defining a Preference in Bankruptcy*, 60 HARV.L.REV. 233, 235 (1946). However, the judiciary are not alone to blame. Congress itself has passed preference laws whose practical details do not comport with the grand theory of the action.

A "perfect" preference-avoidance law would avoid all preferential transfers made while debtor was actually insolvent, no matter how long before formal bankruptcy such transfers occurred, Weisberg, supra, pp. 134–136, citing Bruce R. Kraus, *Preferential Transfers and the Value of the Insolvent Firm*, 87 YALE L.J. 1449 (1978) (student author). No American preference-avoidance law has yet reached this level of ruthless efficiency. Rather, preference laws have permitted avoidance only of transfers made within some arbitrary period before bankruptcy—the so-called "reach-back period." The Bankruptcy Act of 1898 ("the Act") adopted a reach-back period of four months before the date of bankruptcy, Act § 60a(1). The Bankruptcy Code of 1978 ("the Code") reduced this period to only 90 days before the date of bankruptcy, Code § 547(b)(4)(A). Such time limits are absolute and inflexible, *Gates v. First Nat'l Bank of Richmond*, 1 F.2d 820, 822 (E.D.Va.1924). Because of their simple clarity and rigidity, such time limits facilitate commercial calculations. By the same token, they reduce what should be an exercise in equity to an arbitrary "sporting proposition," 2 G. GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES § 384 p. 664 (1940), which may actually encourage creditor misbehavior, Kraus, 87 YALE L.J. pp. 1457–1458.

However, the net effect of the new Code was to enlarge, rather than reduce, the scope of preference avoidance. Act § 60 had permitted avoidance only where a preferred creditor had reason to believe that debtor was insolvent (hereinafter "intent to prefer"), 3 (Pt. 2) *Collier on Bankruptcy* (14th ed. 1977) ¶¶ 60.52ff. But Code § 547 allowed preferences to be avoided within the 90–day reach-back period, regardless of intent. And § 547(b)(4)(B) added an exception to the "normal" reach-back period of only 90 days: it created a "special" reach-back period of up to one year before the date of bankruptcy, for transfers involving insiders. As enacted in 1978, § 547(b)(4)(B) permitted this greatly-increased reach-back period to be invoked only where there was proof of intent to prefer. But in 1984, Congress deleted this last remnant of the old requirement of intent, 4 *Collier on Bankruptcy* (15th ed. 1992) ¶ 547.01 pp. 547-10, -11. Now, insider preferences may be avoided up to one year before bankruptcy, regardless of intent. By these provisions, among others, the Code establishes "preference-avoidance powers of unprecedented scope," *In re Hancock*, 137 B.R. p. 838.

This adversary proceeding tests the limits of these broad new powers. Just how broad are they?

According to the Trustee, Pugliese is both secured and preferred: Pugliese managed to promote his general unsecured claim for damages into a lien claim with right of prior payment, in a manner which is unfair to other general unsecured creditors of Sevitski's estate. The Trustee wants to use bankruptcy's preference-avoidance laws to cancel Pugliese's lien creditor status, and return him to the level of his erstwhile fellows, the other general unsecured creditors. The fixing of a lien on debtor's property is a "transfer" which might be avoidable, 11 U.S.C. § 101(54), and see former Bankruptcy Act § 1(30), 1 *Collier on Bankruptcy* (14th ed. 1974) ¶ 1.30, 3 (Pt. 2) *Collier on Bankruptcy* (14th ed. 1977) ¶¶ 60.11, 60.12, 60.13. However, Pugliese acquired lien creditor status more than 90 days before Sevitski entered bankruptcy; so the transfer, even if preferential in some sense, cannot be attacked under the "normal" 90–day time limits of 11 U.S.C. § 547(b)(4)(A). The Trustee asserts the right to attack this transfer under the "special" one-year time limit of § 547(b)(4)(B), applicable to insider transfers—even though Pugliese is admittedly not an insider! The Trustee asks this Court to apply the one-year insider period against this non-insider creditor, according to the so-called "Deprizio doctrine."

The "Deprizio doctrine" first appeared in the case of *In re Big Three Transportation, Inc.*, 41 B.R. 16 (B.C., W.D.Ark.1983). But it is named after a now-famous series of opinions in *In re V.N. Deprizio Construction Company*—see *In re V.N. Deprizio Construction Co.: Levit v. Melrose Park Nat'l Bank*, 58 B.R. 478 (B.C., N.D.Ill.1986), rev'd by *In re V.N. Deprizio Construction Co.: Levit v. Ingersoll Rand Financial Corp.*, 86 B.R. 545 (N.D.Ill. 1988), aff'd in part by *Levit v. Ingersoll Rand Financial Corporation*, 874 F.2d 1186 (7th Circ.1989). V.N. Deprizio Construction Company ("Deprizio Co.") borrowed money from various lenders; the loans were guaranteed by Richard, Robert and Edward Deprizio, who were insiders of Deprizio Co. Deprizio Co. also incurred debts to employee funds ("the Funds"), which were guaranteed by Richard Depri-

zio; and tax debts for which Deprizio Co.'s officers might be liable under 26 U.S.C. § 7501. In 1982–1983, Deprizio Co. paid large amounts of cash to its commercial lenders, to the Funds, and to Internal Revenue Service ("IRS"), and then filed bankruptcy. Deprizio Co.'s bankruptcy Trustee sued the lenders, the Funds, and the IRS to recover the cash payments as preferential transfers under 11 U.S.C. § 547. The Trustee argued that the payments were made by Deprizio Co. at the instigation of its insiders, the individual Deprizios, for the purpose or with the effect of relieving these individuals of their own obligations as guarantors or co-debtors; and that accordingly the transfers should be avoidable up to one year before bankruptcy, even though the defendant lenders, Funds, and IRS were not themselves insiders. The Bankruptcy Court refused to avoid the transfers, on the grounds that (1) the transaction involved two transfers, one "to and for the benefit of" the non-insider creditors and one "for the benefit of" the insider creditors, and only the latter was subject to the one-year reach-back period; (2) the transfer "for the benefit of" insiders was recoverable only from such insiders; and (3) in any event, the court should " 'use its equitable powers' " to prevent recovery from " 'a party who is innocent of wrongdoing,' " 58 B.R. p. 481 quoting a passage from *Collier on Bankruptcy* (without detailed citation). The District Court reversed and avoided the transfers, on the grounds that (1) there was only one transfer, although there were two different benefits; (2) § 547(b)(1), (4)(B) expressly permits avoidance of a transfer, if it is made "for the benefit of" an insider, whether or not it is made "to" such insider; (3) § 550(a)(1) expressly permits recovery of an avoided transfer from "the initial transferee," whether or not such transferee was the same insider who benefited from the transfer; and (4) neither equity nor policy call for a different result, since this rule merely causes the guarantees to be enforced against the guarantors according to their terms. The 7th Circuit Court of Appeals approved the reasoning and affirmed the ruling of the District Court. (The

Court of Appeals reversed the District Court in part, on other matters which are not pertinent here, regarding treatment of the Funds and IRS.)

The Trustee herein asks this Court to follow *Deprizio* and apply its rule to the facts in this case. The Trustee proposes that there was a transfer of property of the debtor, satisfying the first clause of § 547(b); that such transfer was not only to and for the benefit of Pugliese, but was also for the benefit of Sevitski's insiders, who are contingent creditors of Sevitski, satisfying § 547(b)(1); that such transfer was for and on account of an antecedent debt, satisfying § 547(b)(2); that such transfer was made between 90 days and one year before bankruptcy, for the benefit of insiders, satisfying § 547(b)(4)(B); and that such transfer improved the position of both Pugliese and Sevitski's insiders, satisfying § 547(b)(5). Hence, says the Trustee, he is entitled to summary judgment on all these elements of § 547.

The Trustee matches the facts in this matter to the words of the statute. But "[m]ore than language lies behind this approach," *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d p. 1194. The Trustee achieves the purpose of preference laws, by eliminating the advantage Pugliese gained over other creditors in the pre-bankruptcy "race to the courthouse." The Trustee does this in a relatively gentle manner, without requiring Pugliese to pay any money or return any property to Sevitski's estate. The Trustee would merely cancel Pugliese's judgment lien, reducing him to a level of equality with other creditors like himself.

Pugliese counters that there was no transfer "to or for the benefit of" insiders, because Pugliese had no "intent to benefit any insider," Pugliese's brief p. 7; that Pugliese is not an insider, even though Sevitski's co-debtors were; that the transfer to Pugliese was made more than 90 days before Sevitski entered bankruptcy; that under such circumstances, the "meaning and ... intent" of § 547(b) is that a transfer "to" Pugliese should not be avoided, whether or not it is also "for the benefit of" insiders; that the *Deprizio* case is distinguishable, in that it involved payments made voluntarily by a corporate debtor at the direction of insider-principals, while the present case involves the involuntary fixing of a lien by the action of hostile outsiders, whose "unintended beneficiaries" were Sevitski's insiders, Pugliese's brief p. 7; that the *Deprizio* case is further distinguishable, in that it caused the non-insiders who received the transfer to resort to bargained-for guarantees, while in this case Pugliese did not bargain and there are no guarantors; and that it is "inequitable" to punish Pugliese for his own diligence in redressing the fraud which Sevitski and Sevitski's insiders perpetrated on him.

■ Some of Pugliese's arguments miss the point. There were no "bargained-for guarantees" here in the manner of *Deprizio;* but this is a distinction without a difference. There are co-obligors here, as in *Deprizio*, even though the obligations here happen to be involuntary. Pugliese does not need guarantees; he can attack the insiders along with Sevitski on the strength of his judgment for joint and several liability. Pugliese's "intent" and "innocence" are immaterial. Modern preference law deals with effects, not with intentions—with objective inequality, not with malicious motives. Pugliese is not punished for his diligence; and those who wronged him are not excused. Preference laws are not punitive; they are distributive. They confer no benefit on Sevitski and his insiders, who defrauded Pugliese. Pugliese himself has unwittingly conferred a benefit on Sevitski's insiders, who are equally guilty with Sevitski, at the expense of other creditors of Sevitski who are just as innocent as Pugliese. The Trustee seeks to undo the wrong Pugliese has done to his fellow creditors. In this sense, it is the Trustee, not Pugliese, who has the better claim to equity.

But Pugliese's position has some merit. Pugliese asserts that Congress never intended § 547(b)(4)(B) to work as the Trustee would use it. If "Congressional intent" means "those situations which Congress definitely contemplated and expected, and

none others," then Pugliese is probably correct. The "Deprizio doctrine" can be made to fit the words of the statute; yet it is a strikingly ingenious extension of the ordinary sense of those words—it is not by any means an obvious application of the statute. There is no indication that Congress anticipated any such application of § 547's terms. This Court knows of no floor statements, committee reports, or other legislative history of §§ 547, 550 which specifically mention application of the insider preference period to non-insider creditors in the manner of *Deprizio*. It is said that "[t]here is no helpful legislative history," *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d p. 1196. This Court has not exhaustively searched the hearings and other minutiae of legislative history, for reasons that will appear below. But for purposes of this opinion, this Court presumes that no one in Congress expressly proposed or specifically contemplated that § 547 would be applied according to the "Deprizio doctrine." And the "Deprizio doctrine" has at least one untoward effect: it subjects non-insider creditors like Pugliese to the potentially harsh operation of preference-avoidance laws, not in a systematic manner, but according to the fortuitous circumstance of whether or not a particular debtor in bankruptcy happens to have insider-creditors. In the *Deprizio* case itself, at least, the transfers to be avoided were motivated by insider-principals for their own benefit. Here, there is no connection between Pugliese and the insiders—indeed, they are enemies. Another creditor, like Pugliese, who did what Pugliese did, with the same preferential effect, to a debtor in bankruptcy who happened to have no insiders, would be immune from attack under § 547. The Trustee's application of § 547 is potentially uneven. In this sense, Pugliese is unfairly treated, as compared with other preferred creditors in other possible cases.

The Trustee asks this Court to construe §§ 547, 550 "strictly," i.e. literally, which here would result in broad application of the statutes to many different situations. Pugliese asks this Court to construe §§ 547, 550 "liberally," i.e. in light of cir- cumstances and result, which here could result in narrow application of the statutes to situations of a standard type. See *In re McKaskle*, 117 B.R. 671, 674 (B.C., N.D.Okl.1990).

The problem has been addressed in this Circuit in the case of *In re Robinson Brothers Drilling, Inc.: Lowrey v. First Nat'l Bank of Bethany*, 97 B.R. 77 (W.D.Okl.1988), aff'd and adopted by *In re Robinson Brothers Drilling, Inc.: Manufacturers Hanover Leasing Corp. v. Lowry*, 892 F.2d 850 (10th Circ.1989). The facts were much like those in *Deprizio*. So was the result. The Bankruptcy Court "us[ed] its equitable powers to overcome what it perceived as ambiguities in the statutes," 97 B.R. p. 82. The District Court reversed; and its opinion was affirmed and adopted by the Court of Appeals. The District Court cited *Deprizio* with approval; but the District Court based its decision on its own interpretation of §§ 547, 550, and not merely on *Deprizio's* example. The District Court held that there were no "ambiguities in the statutes;" and rejected the two-transfer theory as a circumvention of "the express language of the statutes," 97 B.R. p. 79. The District Court adopted a "strict construction of the plain meaning of the statutes in question ... a literal interpretation of the ... Code as enacted by Congress," 97 B.R. pp. 79, 82. So read, §§ 547, 550 plainly permit avoidance and recovery of a transfer made within one year of bankruptcy "for the benefit of" an insider, whether or not said insider is the same creditor who received the transfer and is sued for its recovery. The District Court eschewed a "result-oriented approach," 97 B.R. p. 82; and quoted with approval a remark by the 7th Circuit Court that " '[b]ankruptcy statutes are not special cases,' " 97 B.R. p. 81 quoting *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 894 (7th Circ.1988). The District Court stated that its ruling was equitable— but that, in any event, equity in the sense of " 'free-floating discretion' " was restrained by express statutory command, 97 B.R. p. 82 quoting *In re Chicago, Milwau-*

*kee, St. Paul & Pacific R.R.*, 791 F.2d 524, 528 (7th Cir.1986), cert. den. 481 U.S. 1068, 107 S.Ct. 2460, 95 L.Ed.2d 869.

> With plain language, Congress developed this hard and fast rule to help prevent litigation over the issue of bad faith preferential payments by debtors. Unfortunately, this rule does not necessarily have a just result in all cases. Under the present case, for example, there is no evidence of bad faith associated with the payments by the debtor. However, because the transfer ... serves to benefit ... an insider, the transfer is covered by the statutes, and is thus avoidable and recoverable.

97 B.R. p. 83.

 Like *Deprizio*, the *Robinson Brothers* case differs somewhat from the case before this Court. The main difference is that the transfers in *Deprizio* and *Robinson Brothers* were insider-motivated, while the transfer in the present case was not. But there is also an important similarity— namely, that transfers in all three cases were insider-beneficial. The statute requires insider benefit; it does not require insider motivation. And " '[b]ankruptcy statutes are not special cases.' " *Robinson Brothers* tells this Court to look to the words of the statute, not to this or that set of circumstances. This Court is bound to follow *Robinson Brothers* where it applies; and it applies to cases under § 547 in which a transfer is made for the benefit of insiders—like the case now before this Court. *Robinson Brothers* commits this Court to a "strict ... literal ... hard and fast" interpretation and application of §§ 547, 550, even if it "does not necessarily have a just result." This Court is unable to make its own choice between the competing policies and equities argued by the Trustee and Pugliese. *Robinson Brothers* compels this Court to hold for the Trustee and against Pugliese.

For once, statutory rules are "manipulated," not "to preserve transactions against a preference attack," but rather to facilitate a preference attack. The usual "ritual [of] twentieth century American preference law" takes an unusual turn.

Accordingly, the Trustee's motion for summary judgment is hereby granted as to all elements of 11 U.S.C. § 547(b) except subsection (b)(3); defendants' motion for summary judgment is denied; and further proceedings will be had on the sole remaining issue, namely insolvency under 11 U.S.C. § 547(b)(3).

AND IT IS SO ORDERED.