**In the Matter of DG ACQUISITION CORP., et al., Debtors.**

**DG CREDITOR CORP. as Trustee for DG Creditor Trust, Plaintiff,**

v.

**AMERICAN EXPRESS BANK LTD., Defendant.**

**Bankruptcy Nos. 92–1492 to 92–1496. Adv. No. 95–8.**

United States Bankruptcy Court, D. Delaware.

Sept. 15, 1995.

Michael B. Joseph, Ferry, Joseph & Fink, Wilmington, DE, David I. Blejwas, Joshua I. Divack, Hahn & Hessen, New York City, for Defendant.

John D. Demmy, Morris, James, Hitchens & Williams, Wilmington, DE, Robert J. D'Agostino, Atlanta, GA, Robert J. Mottern, Martin, Van Gelderen, Mottern & Jones, Atlanta, GA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Chief Judge.

American Express Bank Ltd. has moved for partial summary judgment on the amended complaint of DG Creditor Corp., as Trustee for DG Creditor Trust. This is the court's Opinion on this core matter. 28 U.S.C. § 157(b)(2)(F).

## I. *LEGAL STANDARD*

 In considering American Express' motion for partial summary judgment, the court will view the record and the inferences therefrom in the light most favorable to DG Creditor Corp. *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987). The record consists of the pleadings and an affidavit. If that record shows no genuine issue as to any material fact, and American Express is entitled to judgment as a matter of law, then partial summary judgment shall be granted. Fed.R.Bankr.P. 7056(c). Here, the parties' dispute is truly one of law. American Express has raised two legal propositions in this motion, either of which, if true, would be sufficient to dismiss with prejudice two of the three counts contained in the complaint.

## II. *FACTS*

The complaint centers around a transaction that occurred on March 20, 1992. On

that date, Isaac Dabah, Haim Dabah, Ezra Dabah, and Morris Dabah, pledged in the aggregate 998,652 shares of common stock of The Gitano Group, Inc. to American Express Bank Ltd. A brief history of events leading up to that pledge is helpful.

In December 1989, American Express provided a $30 million revolving credit facility for Dutton Trading Limited, a Hong Kong corporation owned by the Dabahs. Dutton granted American Express a security interest in various securities as collateral to secure the Dutton loan.

In a separate guaranty agreement dated the same day, each of the Dabahs guaranteed the Dutton loan from American Express. In the guarantee, the Dabahs each agreed to a negative pledge clause relating to stock the Dabahs owned in The Gitano Group, Inc., a Delaware corporation. That clause stipulated that if at any time Dutton's own obligations to American Express exceeded 70% of the market value of the encumbered securities, the Dabahs would not pledge any shares of the Gitano Group Inc. without granting American Express a first lien on unencumbered shares of Gitano having a market value equal to the Gitano stock pledged to a third party.

In 1991, the Dabahs pledged over 4.5 million shares of Gitano common to certain third party institutional lenders other than American Express. It was not until March 20, 1992 that the Dabahs honored the negative pledge clause by pledging in the aggregate 998,652 shares of Gitano common stock.[1] American Express took possession of the stock. According to the amended complaint, at this time, the market value of the shares pledged was about $15 million. In May 1992, American Express called the loan to Dutton, foreclosed on the Dutton collateral, leaving a deficiency of approximately $6,593,000.

DG Acquisition Corp. and each of the Dabahs filed separate chapter 11 petitions in this court on November 25, 1992. This is more than 90 days but less than one year after the Dabahs honored the negative pledge. In May 1993, this court lifted the automatic stay with respect to the Gitano stock held by American Express. Thereafter, American Express sold the shares, leaving a claimed deficiency against each of the Dabahs' estates of about $3,685,700.27. On October 27, 1993, this court confirmed the debtors' third amended joint plan of reorganization. Article VII and Exhibit A of that plan established the "DG Creditor Trust." The debtors assigned substantially all their assets to this Trust. The DG Creditor Trustee assumed the responsibility of liquidating and distributing the assets of the Trust. It is this latter entity which filed the present adversary proceeding.

As amended, the Trustee's complaint asserts:

(1) that the aggregate Dabah pledge of 998,652 shares of Gitano common to American Express is avoidable under 11' U.S.C. § 547(b) (count I);

(2) that the claims and liens of American Express should be equitably subordinated to the claims of general creditors (count II); and

(3) that the value of the pledge is recoverable from American Express pursuant to 11 U.S.C. § 550 (count III).

Thus, counts I and III together seek approximately $15 million from American Express. American Express moves for summary judgment on counts I and III.[2]

### III. *DISCUSSION*

Section 547(b) states:

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a *creditor*;

---

1. Each of the Dabahs pledged shares as follows:
 1. Isaac—311,432
 2. Haim—471,000
 3. Ezra—184,051
 4. Morris—32,169

2. With the court's permission, American Express' present motion is limited to the two legal theories discussed in this opinion. American Express has other legal theories that are preserved for a later date, if necessary.

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such *creditor* at the time of such transfer was *an insider.*

11 U.S.C. § 547(b) (emphasis added).

For Chapter 11 cases commenced prior to October 22, 1994, section 550 stated:

[T]o the extent that a transfer is avoided under section … 547, … the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

Although section 550 has been amended, that amendment occurred after DG filed bankruptcy, and the above statutory language is the version of section 550 that applies to this adversary proceeding.

A cause of action based upon sections 547 and 550 is commonly referred to as a "preference action." The Trustee's preference theory is as follows. The "transfer of an interest" the Trustee seeks to avoid is the pledge of Gitano stock each of the four Dabahs made on March 20, 1992. With respect to each transfer, the other three Dabahs were "creditors" who each benefited from the pledge by reducing his exposure on his respective guaranty on the Dutton loan from American Express. The date of each pledge was more than 90 days but less than one year before each Dabah filed his respective bankruptcy petition, and thus, the Trustee relies upon § 547(b)(4)(B). Each Dabah was an insider of each other. American Express is the "initial transferee" of each pledge. The Trustee

relies upon section 550 to recover the value of the Gitano stock that the Dabahs pledged to American Express, which the Trustee believes is about $15 million. In the present motion, with respect to all four of the transfers, American Express disputes that the other three Dabahs were "creditors," and disputes that an insider's guaranty exposes an outside lender such as American Express to an extended preference-avoidance period under 11 U.S.C. § 547(b)(4)(B) that would entitle the Trustee to recovery pursuant to 11 U.S.C. § 550.

A. *The Dabahs Were "Creditors" of Each Other at the Time of Each Transfer of Interest.*

Initially, American Express argues that the Dabahs, as insider co-guarantors, were not "creditors" of each other at the time of the March 20, 1992 transfers, as required by § 547(b)(1) and § 547(b)(4)(B).

A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). In turn, a claim is a:

(A) right to payment, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Here, the Trustee asserts that each Dabah is a creditor of the other three Dabah estates because each possessed a right of contribution from the other three Dabahs in the event a Dabah had to honor its guaranty. American Express argues that under the applicable substantive law, a cause of action for contribution does not exist until one guaran-

tor pays more than his aliquot[3] share of the primary debtor's obligation to the third-party creditor, and that as of March 20, 1992, no guaranty payments had been made. As the Trustee points out, this argument does not control whether a bankruptcy claim exists. A creditor may possess a bankruptcy claim and not possess a cause of action on that claim. *In re United Merchants and Manufacturers*, 166 B.R. 234, 237–39 (Bankr.D.Del. 1994) (discussing *In re Remington Rand Corp.*, 836 F.2d 825 (3d Cir.1988)).

American Express acknowledges that "each co-guarantor's balance sheet properly reflects equal and offsetting contingent assets and liabilities to and from his co-guarantors." Opening brief, at 28. In an attempt to sidestep this problem with its reasoning, American Express creatively argues that "prior to the commencement of payments, these contingent assets and liabilities net out to zero, and no co-guarantor is a contingent debtor or creditor of the other." *Id.* at 28. As the Trustee points out, whether one is a creditor within the meaning of the Bankruptcy Code does not depend on whether one holds a net claim against the debtor. Indeed, section 502(e)(1)(B) of the Bankruptcy Code expressly recognizes the possibility of duplicate claims of contribution. *E.g., In re Harvard*, 138 B.R. 10, 12 (Bankr.D.Del.1992). The Dabahs were creditors of each other at the relevant time. *Accord Adams v. Pugliese (In re Sevitski)*, 151 B.R. 590, 593 (Bankr.N.D.Okla.1993) (pre-petition co-judgment debtors are creditors of bankruptcy debtor on basis of their joint and several liability).

### B. *The Deprizio Doctrine Will be Followed.*

American Express' other argument in this motion for partial summary judgment is that an insider's guaranty does not expose an outside lender to an extended preference-avoidance period under 11 U.S.C. § 547(b)(4)(B) that would entitle the Trustee to recovery pursuant to 11 U.S.C. § 550. The jurisprudence analyzing this legal issue is well developed. The leading case is *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186 (7th Cir.1989). The *Deprizio* court held, in a situation factually similar to the circumstances here, that a trustee may recover from a non-insider, lender payments received from a debtor made more than ninety days but less than one year before the petition date, which were for the benefit of an insider who had guaranteed the debtor's obligations to the lender, by reducing that insider's exposure on the guaranty, where that insider was a creditor of the debtor because of his contingent rights to reimbursement or indemnification. *Deprizio* has been followed by each of the five other Circuit Court of Appeals that have considered the issue.[4] In those Circuits where the Court of Appeals has not ruled, the lower courts are divided on the *Deprizio* issue.[5]

In this Circuit, neither the United States Court of Appeals for the Third Circuit nor the United States District Court for the District of Delaware has ruled on the *Deprizio* issue. Against this jurisprudential backdrop, American Express asserts two reasons why this court should reject the *Deprizio* doctrine.

### 1. *The 1994 Bankruptcy Reform Act Should not be Construed to Overrule Deprizio Retroactively.*

First, American Express argues that Congressional amendments to section 550 made

---

3. "Aliquot" is a term of New York law that is defined in Black's Law Dictionary as "contained in something else an exact number of times."

4. *Galloway v. First Alabama Bank (In re Wesley Indus., Inc.)*, 30 F.3d 1438 (11th Cir.1994); *Official Unsecured Creditors Committee v. U.S. National Bank of Oregon (In re Sufolla, Inc.)*, 2 F.3d 977 (9th Cir.1993); *T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex Foods, Inc.)*, 950 F.2d 1187, 1194 (5th Cir.1992); *Ray v. City Bank &*

*Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 1494 (6th Cir.1990); *Lowrey v. Manufacturers Hanover Leasing (In re Robinson Brothers Drilling, Inc.)*, 97 B.R. 77 (W.D.Okla.1988), *aff'd* 892 F.2d 850 (10th Cir.1989) (adopting lower court's opinion).

5. *See, e.g., Performance Communications v. First National Bank (In re Performance Communications)*, 126 B.R. 473, 475 n. 3. (Bankr.W.D.Pa. 1991) (citing cases).

after the transactions here indicate that Congress never intended for section 550 to permit the recovery from a non-insider transferee of a preferential transfer for the benefit of an insider made between ninety days and one year prior to the petition date. American Express' argument is based on the legislative history of the amended section 550 as follows:

For Chapter 11 cases commenced prior to October 22, 1994, 11 U.S.C. § 550 stated:

[T]o the extent that a transfer is avoided under section ... 547, ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

As part of the Bankruptcy Reform Act of 1994, Congress substantively amended 11 U.S.C. § 550 by adding a new subsection (c) as follows:

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may *not* recover under subsection (a) from a transferee that is *not* an insider.

11 U.S.C. § 550(c) (emphasis added). This new subsection does not state that it is retroactive.

The legislative history to this amendment states:

Because of the concern that corporate insiders (such as officers and directors) who are creditors of their own corporation have an unfair advantage over outside creditors, section 547 of the Bankruptcy Code further authorizes trustees to recapture preferential payments made to such insiders in

their capacity as creditors a full year prior to a bankruptcy filing. Several recent court decisions have allowed trustees to recapture payments made to non-insider creditors a full year prior to the bankruptcy filing, if an insider benefits from the transfer in some way [citing *Deprizio* and two other Court of Appeals cases]. Although the creditor is not an insider in these cases, the courts have reasoned that because the repayment benefitted a corporate insider (namely the officer who signed the guarantee) the non-insider transferee should be liable for returning the transfer to the bankrupt estate as if it were an insider as well. This section overrules the *Deprizio* line of cases and clarifies that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90–day statutory period.

H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 44–45, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3353.

Based on this legislative history, American Express argues as follows:

This legislative history ... makes it abundantly clear that Congress never intended 11 U.S.C. § 550, as enacted prior to the 1994 Amendment, to subject non-insiders to liability for preference recovery beyond the ninety day statutory period.

[T]he 1994 Amendment does not specifically apply to cases commenced before the date of enactment of the Bankruptcy Reform Act of 1994. However, it is a well-settled canon of statutory construction that 'subsequent *legislation* reflecting Congress' interpretation of an earlier act is entitled to substantial weight in determining the meaning of an earlier statute,' *Barnes v. Cohen*, 749 F.2d 1009, 1015 (3rd Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

Opening brief, at 15 (emphasis added).

■■ This argument requires the court to consider the effect of subsequent legislation, and statements made in subsequent leg-

islative history on the judicial construction of a statute. In general, congressional enactments are not construed to have retroactive effect unless their language requires this result. *Bowen v. Georgetown Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988). Subsequent legislative history is not controlling on a court, since it is the function of the courts and not the Legislature to interpret an enacted statute. *Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988).

■ American Express' reliance upon the *Barnes* case for the proposition that the 1994 legislative history is entitled to substantial weight is misplaced—*Barnes* never distinguished between the significance of subsequent statutory language and subsequent legislative history.[6] *Barnes* relied upon *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), which indeed stated: "Subsequent *legislation* declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Id.* at 380–81, 89 S.Ct. at 1801 (emphasis added). However, the Supreme Court distinguishes between the legislation itself, and the legislative history accompanying that legislation. Legislative history, such as committee reports, is "obviously less weighty." *South Carolina v. Regan,* 465 U.S. 367, 379–80 n. 17, 104 S.Ct. 1107, 1115 n. 17, 79 L.Ed.2d 372 (1984) (discussing scope of *Red Lion* ). The *Regan* court went on to observe that legislative history forms "a hazardous basis for inferring intent of an earlier [Congress.]" *Id.* at 379 n. 17, 104 S.Ct. at 1115 n. 17 (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980)). *See generally* James J. Brudney, *Congressional Commentary on Judicial Interpretations of Statutes: Idle Chatter or Telling Response?,* 93 Michigan L.Rev.

1, 61, 84–85 (Oct.1994) (discussing appropriate weight that should be given to legislative commentary versus textual changes); William N. Eskridge, Jr., *Post–Enactment Legislative Signals,* Law and Contemp. Problems, Winter 1994, at 75, 83–85 (discussing tendency of Rehnquist Court to treat post-enactment legislative history with hostility).

Moreover, even giving weight to the Committee report language that the amendment "clarifies" the proper interpretation of section 550, and that the amendment "overrules" the *Deprizio* line of cases, the question still remains whether the overruling is intended to apply retroactively. *Rivers v. Roadway Exp., Inc.,* —— U.S. ——, ——, ——, 114 S.Ct. 1510, 1515, 1516 n. 7, 128 L.Ed.2d 274 (1994).

■ Extremely relevant to this question is section 702 of Title VII of the 1994 Reform Act. Section 702(a) states "except as provided in subsection (b), this Act shall take effect on the date of the enactment." P.L. 103–394, § 702(a). Subsection 702(b) then goes on to list five specific sections of the Bankruptcy Code with different effective dates.[7] Section 550 is *not* one of those exceptions. Congress' failure to list section 550 as such an exception argues heavily against applying the amendment retroactively. *E.g., In re Air Forwarding Sys.,* 176 B.R. 638, 639 (Bankr.M.D.Fla.1995) (applying same reasoning to hold section 550 *Deprizio* amendment only prospective in effect).

In summary, the court finds that the amended section 550 should not be applied retroactively. Notably, *every* decision cited by the parties on this issue agrees with this holding.[8]

2. *Deprizio is the Correct Interpretation of Section 550 Prior to the 1994 Amendments.*

■ American Express alternatively argues this court should independently consid-

---

6. The *Barnes* court did not have to consider the contours of the substantial weight doctrine, as it decided the issue before it on different grounds.

7. For example, section 702(b)(2)(B) states: "The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code *before, on, and*

*after the date of the enactment of this Act,* P.L. 103–394, § 702(b)(2)(B)" (emphasis added).

8. *Pineo v. Reeves Bank (In re Arthur F. Hazen & Co.),* 184 B.R. 233, 236 (W.D.Pa.1995); *O'Neil v. John Deere Indus. Equip. (In re Northeastern Contracting Co.),* 182 B.R. 673 (Bankr.D.Conn.1995); *Pereira v. Lehigh Savings Bank, SLA (In re Artha*

er the *Deprizio* issue, and on the basis of the reasoning espoused by a few lower court decisions, decline to adopt the *Deprizio* doctrine. Six Courts of Appeals have already considered the *Deprizio* issue. Those reported decisions spend 28 pages analyzing the arguments relating to this issue. Those decisions unanimously agree that the *Deprizio* doctrine is the correct and plain English interpretation of the statutory preference sections of the Bankruptcy Code. The majority of and more recent court decisions within this Circuit have followed *Deprizio*. *Pineo v. Reeves Bank (In re Arthur F. Hazen & Co.)*, 184 B.R. 233, 236 (W.D.Pa.1995) (listing decisions in the Third Circuit). The more recent decisional law of the Supreme Court concerning interpretation of the Bankruptcy Code buttresses the underpinnings of the six Court of Appeals' decisions. *E.g.*, *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Moreover, these Court of Appeals' decisions adequately address the criticisms of the *Deprizio* doctrine that American Express discusses, and adequately refutes the reasoning of those lower court decisions that reject *Deprizio*.

## IV. *Conclusion*

Therefore, the Dabahs were creditors of each other at the time they honored the negative pledge on March 20, 1992, and the *Deprizio* theory upon which the trustee wishes to proceed applies in this jurisdiction. An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, September 15, 1995, for the reasons stated in the attached Memorandum Opinion, the motion of American Express for partial summary judgment is DENIED.

*Management)*, 174 B.R. 671, 677 (Bankr.S.D.N.Y. 1994); *Rosen v. Air Forwarding Sys. (In re Air* *Forwarding Sys.)*, 176 B.R. 638, 639 (Bankr. M.D.Fla.1995).