WALTER WILLIAM H. FITHIAN ET UX. *v.* RICHARD F. JAMAR ET UX.

[No. 24, September Term, 1978.]

*Decided October 8, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*David M. Williams* for appellants.

*C. Daniel Saunders* for appellees.

COLE, J., delivered the opinion of the Court.

The dispute in this case involves the rights and liabilities of co-makers of a note in a suit among themselves, where none of the disputants is a holder of the note. We granted certiorari to consider two questions, which simply stated are:

1. Whether a co-maker of a note was also an accommodation maker of the note and thus not liable to the party accommodated;

2. Whether the agreement of one co-maker to assume another co-maker's obligation on a note constitutes a defense to the latter when sued for contribution by the former.

In 1967 Walter Fithian (Walter) and Richard Jamar (Richard), who were employed as printers at Baltimore Business Forms, decided to form a partnership to carry on their own printing business. They applied to the People's Bank of Chestertown, Maryland (Bank) for an $11,000 business loan to enable them to purchase some equipment. The Bank agreed to lend the money to Walter and Richard only if Walter's wife, Connie, Richard's wife, Janet, and Walter's parents, Walter William (Bill) and Mildred Fithian would co-sign the note. The Executive Vice-President of the Bank explained that the additional signatures were required to make the Bank more secure. The note, which authorized confession of judgment in the event of default, was signed on its face in the bottom right-hand corner by these six parties. The monies loaned were deposited in Walter and Richard's business checking account and were used to purchase printing equipment.

By 1969, Walter and Richard were encountering business problems. They spoke with Frank Hogans (Hogans) and Gerald Bos (Bos) (who were interested in joining the business) about forming a corporation to be called J-F Printing Co., Inc. and refinancing the note so that it (the note) could become a corporate rather than an individual obligation. The business continued to falter and on March 23, 1972 Walter, Richard, Hogans and Bos met and entered into a written agreement in their individual capacities whereby Richard was to take over management and ownership of the business in exchange for his assumption of liability for the company's outstanding obligations, one of which was the note in question in this case. The agreement also provided that should Richard default in the performance of those obligations, Walter, Hogans, and Bos would have the right to terminate the agreement and resume ownership of the business.

Pursuant to the agreement Richard assumed control of the business but was unable to make any further payments on the note. Consequently, the Executive Vice-President of the Bank requested that Bill and Mildred Fithian pay the note in full. They did and the Bank assigned the note to them for whatever disposition they might choose. Bill demanded that Richard indemnify him for the total amount Bill paid on the note.

Receiving no satisfaction from Richard, Bill and Mildred sought judicial relief. On November 10, 1976, a confessed judgment against Richard and Janet of $8,953.95, the balance on the note paid by Bill and Mildred, with interest from January 18, 1974, court costs, and attorney's fees of $472.70, was entered in the Circuit Court for Kent County. Richard and Janet filed a motion to vacate the judgment, which the circuit court granted and ordered a hearing on the merits. Prior to trial, Richard and Janet filed a third party claim against Walter and Connie averring that as co-makers of the note, Walter and Connie were liable to Richard and Janet for any judgment that Bill and Mildred might recover against Richard and Janet. Walter and Connie counterclaimed contending that the agreement barred Richard's recovery.

The matter was brought to trial on August 25, 1977 before

the circuit court, sitting without a jury. The court found that the J-F Printing Company, Inc. was never a de jure corporation and that those who attempted to act under that name were merely acting in their individual capacities; that the March 23, 1972 agreement was not material to the determination of the case; that Bill and Mildred were accommodation makers for Richard, Janet, Walter and Connie and were entitled to collect from any one of the four.

Final judgment was entered on September 6, 1977 for Bill and Mildred against Richard and Janet in the amount of $8,953.95, the principal sum due, plus $2,288.95, representing interest from January 18, 1974 to August 25, 1977. The court denied Bill and Mildred's claim for collection fees specified in the note and also entered a judgment for Richard and Janet on Walter and Connie's counterclaim. In the third party claim of Richard and Janet against Walter and Connie, judgment was entered for Richard and Janet in the amount of $5,621.45, fifty percent of the total judgment. The costs of the case were to be divided equally between Richard and Janet and Walter and Connie.

Bill and Mildred Fithian filed a timely appeal to the Court of Special Appeals, complaining of the circuit court's adverse ruling as to the collection fees. Walter and Connie took their own appeal, challenging the lower court's findings concerning both Connie's status in relation to the note and the materiality of the March, 1972 agreement. These appeals were consolidated for oral argument in that court.

In an unreported per curiam decision filed on April 7, 1978, *Fithian v. Jamar,* No. 946, Sept. Term, 1977, the Court of Special Appeals affirmed the circuit court in part and reversed in part. The Court of Special Appeals reversed on the issue of collection fees, ruling that there was a "valid and enforceable contract right of Bill and Mildred to the payment of collection costs ....";  the Court of Special Appeals affirmed the circuit court's finding that Connie Fithian was a co-maker of the note, and not an accommodation party. The Court of Special Appeals also affirmed the trial court's finding that the March, 1972 agreement was not material to

the case because it was "a private agreement between only two (2) of the six (6) makers of the note."

Walter and Connie (appellants) requested review of these rulings in this Court, and we granted their petition for certiorari on June 21, 1978 to consider the two questions presented: whether Connie Fithian was an accommodation maker of the note and thus not liable to the party accommodated; and whether the March, 1972 agreement constitutes a defense to Richard and Janet's (appellees) third party claim against Walter and Connie.

Our disposition of the questioned rulings requires us to reverse and remand. The error which occurred in the court below was caused in part by a failure to fully analyze the individual rights and obligations of Connie, Walter, Janet and Richard. Therefore, in the discussion which follows, in addition to examining the two questions presented, we will clarify the resulting rights and obligations of these parties.

## Richard v. Connie

Since there is no dispute that Connie signed the note, the answer to the first question depends on her purpose in doing so. This is made clear by Maryland Code (1975), § 3-415(1) of the Commercial Law Article which provides that an accommodation party is "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." The undisputed evidence as presented by the Executive Vice-President of the Bank was to the effect that the wives' signatures were required before the Bank would make the loan to Walter and Richard. Such practices are common among lending institutions which recognize that

> [o]ne with money to lend, goods to sell or services to render may have doubts about a prospective debtor's ability to pay. In such cases he is likely to demand more assurance than the debtor's bare promise of payment. The prospective creditor can reduce his risk by requiring some sort of security. One form of security is the Article 9 security interest in the debtor's goods. Another type of security takes

the form of joining a third person on the debtor's obligation. [J. White and R. Summers, *Uniform Commercial Code* § 13-12, at 425 (1972)].

It is readily apparent, therefore, that Connie lent her name to facilitate the loan transaction. As such she lent her name to two parties to the instrument, Richard and Walter, to enable them to receive a *joint* loan for the purchase of equipment for their printing business, thereby giving the Bank the added assurance of having another party to the obligation. Connie signed as an accommodation party as to both Walter and Richard.

Nor is there any merit in the argument advanced by Richard that Connie must be either a co-maker or an accommodation party, that she cannot be both. The actual language of § 3-415(1) indicates that an accommodation party also signs in a particular capacity, as maker, acceptor or indorser of an instrument. The Official Comment 1 to § 3-415 explains that

> [s]ubsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation indorser may be liable only after presentment, notice of dishonor and protest.

Moreover, § 3-415(2) refers specifically to the liability of an accommodation party "in the capacity in which he signed." It follows, therefore, that the fact that Connie was a co-maker of the note does not preclude her from also being an accommodation party.

Section 3-415(5) of the Commercial Law Article states that "an accommodation party is not liable to the party accommodated"; thus, Connie is not liable to Richard. Our predecessors, prior to Maryland's adoption of the Uniform

Commercial Code, explained the reasons for this proposition in *Crothers v. National Bank,* 158 Md. 587, 593, 149 A. 270 (1930):

> Since the accommodating party lends his credit by request to the party accommodated upon the assumption that the latter will discharge the debt when due, it is an implied term of this agreement that the party accommodated cannot acquire any right of action against the accommodating party.

Richard contends, however, that Connie intended to accommodate only her husband, Walter. Even if there were evidence to this effect (and there is none), the subjective intent of a co-maker of a note is of little weight when objective facts and circumstances unambiguously demonstrate the capacity in which the note was signed. *Seaboard Finance Co. of Connecticut, Inc. v. Dorman,* 227 A.2d 441 (Conn. Cir. 1966); *Hover v. Magley,* 116 App. Div. 84, 101 N.Y.S. 245 (1906). It is clear to us that the signatures of both wives were required to effect this joint business venture and thus Connie's signature was as much an accommodation to Richard as it was to Walter. We hold that Connie was an accommodation maker and that she cannot be liable to Richard, the party accommodated. The Court of Special Appeals erroneously held to the contrary.

### Janet v. Connie

The preceding discussion of Connie's status demonstrates that each of the four parties, Walter, Connie, Richard, and Janet, has certain rights and obligations with respect to this note which are not affected by his or her marital status. The court below erred in not fully analyzing these separate rights and obligations. It follows that our finding that Connie has no liability to Richard in no way changes any obligation she may have to Janet. Janet, as well as Connie, is a co-accommodation maker on this note.

The question is therefore whether one co-accommodation maker who pays more than her proportionate share of the

debt has a right of contribution against another co-accommodation maker. The Uniform Commercial Code contains no provision expressly dealing with the right of an accommodation party to contribution from another accommodation party. However, the Code does provide that the principles of the common law remain applicable "[u]nless displaced by the particular provisions" of the Code. Maryland Code (1975), § 1-103 of the Commercial Law Article.

That an accommodation maker has a right of contribution from a co-accommodation maker is a settled principle of the law. The Restatement of Security provides

> A surety who in the performance of his own obligation discharges more than his proportionate share of the principal's duty is entitled to contribution from a co-surety. [Restatement of Security § 149 (1941)].

*Jingles v. Thomas,* 104 So.2d 223 (La. Ct. of App. 1958); *Deden v. Grosse,* 185 Minn. 278, 240 N.W. 909 (1932); *Cooper v. Greenberg,* 191 Va. 495, 61 S.E.2d 875 (1950); *Cost v. MacGregor,* 124 W. Va. 204, 19 S.E.2d 599 (1942).

Maryland has followed this rule. *Jackson v. Cupples,* 239 Md. 637, 212 A.2d 273 (1965). *Jackson* was decided after the effective date of the U.C.C. in Maryland, but the note in question had been executed prior to that date. The Court held that a co-surety who pays a debt has a right of contribution from his co-sureties.

This Court has not addressed this question in regard to a note controlled by the U.C.C. Our research revealed only one case which directly confronted the effect of the U.C.C. on the common law rule. The court stated that the U.C.C. does not change the rule of suretyship law permitting contribution by one surety from a co-surety. *McLochlin v. Miller,* 139 Ind. App. 443, 217 N.E.2d 50 (1966).

Accordingly Janet has a right of contribution against Connie. But this right to contribution is an inchoate claim which does not ripen into being unless and until Janet pays more than her proportionate share to Bill and Mildred. *Cotham and Maldonado v. Board,* 260 Md. 556, 566-67, 273

A.2d 115 (1971). Judgment can be entered on behalf of Janet against Connie, but it must be fashioned so that it may not be enforced until Janet proves she actually paid more than her proportionate share to Bill and Mildred.[1] *Baltimore County v. Stitzel,* 26 Md. App. 175, 184-88, 337 A.2d 721 (1975).

## *Richard v. Walter*

We now turn to the second question as to whether the March, 1972 agreement by which Richard assumed full liability on the note constitutes a defense to Richard and Janet's third party claim that Walter and Connie reimburse them for fifty percent of the primary judgment granted to Bill and Mildred against Richard and Janet. In the circuit court Bill and Mildred Fithian, having paid the instrument to the Bank, successfully exercised their right of recourse on the note under § 3-415(5) of the Commercial Law Article which provides that "[a]n accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse against such party." In discussing this general principle of suretyship law Professors White and Summers explain that

> [a]s between the surety and the debtor, it is clear that the debtor has the primary obligation to pay the debt. Since the creditor is entitled to only one performance and the debtor receives the benefit of the transaction, the surety's obligation is undertaken with the expectation that the debtor will meet his commitment to the creditor. Thus if the surety is made to pay his principal's debt, he has the right to recover from the principal. [J. White and R. Summers, *Uniform Commercial Code,* § 13-12, at 426 (1972) (footnote omitted)].

This Court has adhered to the principle that if an

---

1. A surety who is called upon to pay more than his proportionate share of the debt has a right of contribution from his co-sureties in an amount not to exceed each co-surety's proportionate share of the debt. *See* Schindel v. Danzer, 161 Md. 384, 157 A. 283 (1931); 72 C.J.S. Principal and Surety § 369 (1951). Here the note was signed by four sureties (Bill, Mildred, Connie and Janet); Janet's proportionate share of indebtedness to her co-sureties is 25% of the debt.

accommodation party pays the note to the holder, he has a right of recourse against the party accommodated. *Fuhrman v. Fuhrman,* 115 Md. 436, 80 A. 1082 (1911). Other courts have also adopted this viewpoint. *See Collection Control Bureau v. Weiss,* 50 Cal. App.3d 865, 123 Cal. Rptr. 625 (1975); *Mead Co. v. Doerfler,* 148 Neb. 75, 26 N.W.2d 393 (1947); *Simson v. Bilderbeck, Inc.,* 76 N.M. 667, 417 P.2d 803 (1966); *Reimann v. Hybertsen,* 275 Or. 235, 550 P.2d 436 (1976); *Ilg v. Andrews,* 10 Wash. App. 936, 520 P.2d 1385 (1974).

Similarly, it is axiomatic that one joint obligor may ordinarily claim contribution from a co-obligor after having discharged their mutual obligation. *Jackson v. Cupples, supra, Mallis v. Faraclas,* 235 Md. 109, 200 A.2d 676 (1964). However, this principle is not controlling in the instant case. While the courts below ruled that Walter and Connie must reimburse Richard and Janet for one-half the judgment against them and discounted the significance of the 1972 agreement on this question, we believe that under both statutory and common law principles the 1972 agreement is material to the decision of this case and plays a substantial role in our determination of whether Walter was properly required to pay contribution to Richard. Because neither Connie nor Janet were parties to the agreement, their rights and obligations are not affected.

In the first place, § 3-601(2) of the Commercial Law Article and the Official Comments thereto specifically recognize the possibility of discharge by act or agreement of a party who is otherwise liable on an instrument. Section 3-601(2) reads: "Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money." Official Comment 2 to § 3-601 reads in pertinent part that

> [s]o far as the discharge of any one party is concerned a negotiable instrument differs from any other contract only in the special rules arising out of its character to which paragraphs (a) to (i) of subsection (1) are an index, and in the effect of the discharge against a subsequent holder in due course

*(Section 3-602). Subsection (2) therefore retains from the original Section 119(4) the provision for discharge by "any other act which will discharge a simple contract for the payment of money," and specifically recognizes the possibility of a discharge by agreement.*

*The discharge of any party is a defense available to that party as provided in sections on rights of those who are and are not holders* in due course (Sections 3-305 and 3-306). He has the burden of establishing the defense (Section 3-307). [emphasis supplied].

While this Court has not addressed this precise issue under § 3-601(2), two recent decisions of other jurisdictions do acknowledge that under § 3-601, liability of a party on a negotiable instrument may be discharged by a written agreement. *Brunswick Corporation v. Briscoe,* 523 S.W.2d 115 (Mo. App. 1975); *DiLeo v. Webb,* 50 A.D.2d 570, 375 N.Y.S.2d 29 (1975). Several other courts have endorsed the proposition that co-makers of an instrument may vary their obligations between themselves. *Gelbach v. Dewey,* 105 Cal. App. 149, 286 P. 1062 (1930); *Betts v. Brown,* 219 Ga. 782, 136 S.E.2d 365 (1964); *Quintin v. Magnant,* 285 Mass. 450, 189 N.E. 209 (1934); *Tait v. Downey,* 267 Mass. 422, 166 N.E. 857 (1929); *Lit Bros. v. Goodman,* 144 Pa. Super. Ct. 43, 18 A.2d 519 (1914); *Cooper v. Greenberg,* 191 Va. 495, 61 S.E.2d 875 (1950); *Houston v. Bain,* 170 Va. 378, 196 S.E. 657 (1938); *Leuning v. Hill,* 79 Wash.2d 396, 486 P.2d 87 (1971); *Holland v. Tjosevig,* 109 Wash. 142, 186 P. 317 (1919). Still other courts have held that parol evidence of a special agreement between co-obligors is admissible where liability to a payee is not at issue. *Kroon v. Maxwell,* 297 F. Supp. 277 (E.D. Pa. 1969); *McMahon v. Weesner,* 254 F. Supp. 839 (S.D. Fla. 1966); *Gelbach v. Dewey, supra; Adamson v. McKeon,* 225 N.W. 414 (Iowa 1929); *Tait v. Downey, supra; Apgar's Administrators v. Hiler,* 24 N.J. Law. (4 Zab.) 812 (1854); *Brown v. Arcuri,* 43 A.D.2d 993, 352 N.Y.S.2d 254 (1974); *Stanley v. Parker,* 207 N.C. 159, 176 S.E. 279 (1934); *Dameris v. Homestead Bank,* 495 S.W.2d 52 (Tex. Civ. App. 1973);

*Carver v. Caldwell,* 208 S.W. 555 (Tex. Civ. App. 1919); *Davis v. Davis,* 128 W.Va. 257, 36 S.E.2d 417 (1945).

Applying these principles to the present case, we believe that the 1972 agreement operated to modify the liabilities of Richard and Walter on the note between themselves. We accept the trial court's finding based on the record before it that the partnership between Richard and Walter never was converted into a duly constituted corporation and that the parties conducted the business in their individual capacities rather than as directors of a corporation.[2] Thus, the agreement expressed the intentions of these individuals as between themselves, and as such reflects the transfer of all of the assets and liabilities of the business to Richard in return for his promise to keep the other interested parties, Walter, Hogans and Bos, free from any responsibility for payment of any and all of the business debts, including the note in question. The only safety valve for the transferring individuals was their right upon their own decision to terminate the agreement if Richard demonstrated an inability or unwillingness to keep his promise. Richard and Janet in their briefs concede that the evidence of this agreement is "arguably material" but contend that it is "not highly probative." We disagree. The language of the agreement shows that Richard specifically consented to take responsibility for the obligations of the printing business, including the $11,000 note to the Bank:

> 1. Richard F. Jamar, party of the first part, agrees to take over the operation of J-F Printing Company, Inc., *and to be responsible for the payment of the accounts payable and obligations of said corporation now existing and to be incurred henceforth in the operation of said business.*
>
> 2. The parties of the second part do agree to turn over to Richard F. Jamar, party of the first part, full responsibility for the complete operation of said business as of the full execution and date of this

---

2. In any event, assuming a corporation had been duly formed, it would not change the result we reach under the facts of this case since the corporation was not a party to the agreement and had assumed no obligation to pay the note.

agreement, *conditioned upon said party of the first part proceeding to* operate said business full time and in a businesslike manner, and proceeding to *methodically reduce the outstanding obligations of said corporation, including but not limited to: Two monthly payment notes payable to The People's Bank of Chestertown, ...*

\* \* \*

4. Parties of the second part do hereby agree that upon party of the first part either paying off all obligations of the corporation, or upon making arrangements with all creditors to release parties of the second part from any and all liability for the payment of any indebtednesses of the corporation, past, present or incurred in the future, that parties of the second part will forthwith formally assign unto party of the first part all of their right, title and interest in and to said corporation and the assets thereof ....

\* \* \*

7. Party of the first part agrees not to pledge the credit of any of the parties of the second part, and agrees to hold harmless parties of the second part as to the payment of any bills incurred in his operation of said business during the term of his agreement. [emphasis supplied].

By this agreement, which was not terminated when Richard defaulted on payment of the loan in subsequent years, Walter and Richard agreed that Richard alone was to henceforth bear responsibility for the note. Thus the document's operative effect was to discharge Walter from any obligation on the note as to Richard. Thus the trial court should have entered judgment for Walter on his counterclaim against Richard for indemnification. In other words, by the agreement, Richard gave up his right to claim contribution from his joint obligor, Walter. Therefore, the Court of Special Appeals below erred in affirming judgment for Richard against Walter.

## Janet v. Walter

That the 1972 agreement serves as a defense by Walter against Richard in no way serves to insulate Walter against Janet. Janet's status as an accommodation maker is unaffected by the agreement. As an accommodation maker, Janet has a right to look to any principal, including Walter for any amounts she actually pays. Maryland Code (1975), § 3-415 of the Commercial Law Article. Janet's status as Richard's wife does not affect her status as an accommodation maker. She is entitled to judgment from either principal when she actually pays any amount of the debt.

In summary, Richard is not entitled to judgment against Walter because of the agreement. Rather, Walter is entitled to indemnification from Richard for any amount Walter is forced to pay. Richard is not entitled to judgment against Connie because an accommodation party is not liable to the party accommodated. Janet is entitled to contribution from her co-surety, Connie, the judgment being unenforceable unless and until Janet proves she actually has paid more than her proportionate share of the debt to Bill and Mildred. Similarly, Janet as a surety is entitled to judgment against Walter as a principal for any amount of the debt for which Janet proves payment.[3]

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to reverse the judgment of the Circuit Court for Kent County and to remand to that court with instructions to enter appropriate judgments consistent with the views expressed herein.*
>
> *Costs to be paid by the appellee, Richard F. Jamar.*

---

3. Whether Bill and Mildred were entitled to judgment in the full amount of the debt against Janet we do not decide because Janet did not appeal from that judgment.