**Graydon O. PLEASANTS, Appellant,**

v.

**James D. LOCKE, Appellee.**

**No. 89–7270.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 27, 1990.

Decided Feb. 15, 1991.

David Barmak, with whom Douglas E. Fierberg, Washington, D.C., was on the brief, for appellant.

William James Murphy, Washington, D.C., for appellee.

Before MIKVA, Chief Judge, WILLIAMS and THOMAS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

This appeal raises interesting questions about the common law right of contribution and how to evaluate a joint debtor's claim that he paid more than his *pro rata* share where the transaction involved an exchange of two intangibles not subject to easy valuation. We affirm the district court's resolution of these questions on the facts before us.

### I. BACKGROUND

This diversity suit arises from the satisfaction of a loan from Daniel Parker to Barclay Properties, Inc. ("Barclay"), a real estate development company in the District of Columbia. In late 1981 and early 1982, Barclay's shareholders—Graydon O. Pleasants, William Shaffner and James D. Locke—borrowed sums of money from Parker (totaling over $1.1 million) on behalf of the company, for which they were jointly and severally liable. In 1982, Barclay was forced into bankruptcy after being defrauded by third parties. While in bankruptcy, Barclay was able to obtain several judgments against these individuals (hereinafter the "Farnan judgments"), totaling in excess of $3 million.

In settling their obligations to Parker in 1986, Pleasants, Shaffner and Locke separately negotiated release and settlement agreements with Parker. According to the terms of these agreements, each shareholder assigned his respective one-third share in the Farnan judgments to Parker. In addition, Pleasants paid Parker $323,631 to obtain release from his share of the debt, and Shaffner paid Parker $250,000. Locke, however, paid no cash, obtaining a release from the Parker obligation by merely assigning his share of the Farnan judgments.

Pleasants brought this suit in the district court seeking contribution from Locke, claiming that, in fully satisfying the shareholders' joint liability, Pleasants had paid Parker more than Locke. Locke responded by filing a motion for summary judgment. The district court granted Locke's motion, concluding that Pleasants had failed to present evidence regarding the value of the assigned judgments or his *pro rata* share of the debt. Pleasants argued that there was no need to introduce evidence concerning the value of the assigned judgments or the released debt because, in an arm's length transaction, the court should assume that the items exchanged were equivalent and require the cash payments to be equalized among the three shareholders.

The district court rejected this theory of valuation.

## II. Analysis

■ As this is a diversity suit, the local law of the District of Columbia governs. Before a right of contribution arises, a joint debtor must first establish that he paid more than his *pro rata* share. *See Merchants Mutual Insurance Co. v. Richardson,* 273 A.2d 652, 655 & n. 5 (D.C.App. 1971); *Ottenstein v. Julius Garfinkel & Co.,* 151 A.2d 925, 927 (D.C.Mun.App.1959) (holding that the right of contribution between joint debtors "arises only when one has paid more than his share of the joint obligation"); *Fithian v. Jamar,* 286 Md. 161, 169–70, 410 A.2d 569, 573–74 (1979) (holding that a "right of contribution is an inchoate claim which does not ripen into being unless and until . . . [an obligor] pays more than her proportionate share" of the note); *see also* 2 WILLISTON ON CONTRACTS § 345 (3d ed. 1959), at 772 ("It has been frequently laid down that no right to contribution in favor of a joint debtor exists until actual payment by him of more than [his] share of the whole debt. . . ." (footnotes omitted)).

■ The parties agree that Pleasants must prove that he paid more than his *pro rata* share of the face value of the debt if he hopes to prevail. By "face value," we mean what the debtor legally owes (including the unpaid principal and accrued interest) as opposed to the "market value" or amount that the creditor would likely demand in payment for satisfaction of the debt. Pleasants never provided any valuation of the Farnan judgments assigned to Parker, nor did he offer a specific calculation of the Parker debt. Although Pleasants suggested that the debt owed Parker was just over $1.5 million, that figure reflected the amount due in 1983. Pleasants never offered any calculation that would reflect additional interest charges through the date of settlement three years later, but only quibbled with Locke's $2.4 million figure for 1986. Moreover, Pleasants never provided any estimated valuation of the Farnan judgments assigned to Parker. Be-

cause his cash payment alone would not exceed even his *pro rata* share of the lower 1983 debt figure, it is essential that Pleasants provide some estimate of what the assigned judgments are really worth. If that value is minimal, he has still not paid more than his share.

Pleasants contends, however, that proof of the precise values for either the Farnan judgments or the Parker debt is unnecessary. He characterizes the three separate release and settlement agreements as one transfer (of the Farnan judgments plus $573,631 cash as consideration) in full satisfaction of the debt. As jointly liable shareholders, Locke and Shaffner had to contribute equally to the consideration paid in full satisfaction of the debt; under his theory, the cash payment would be split three ways and Locke would owe Pleasants $132,427. His argument boils down to this: Because Parker negotiated with each of his debtors at arm's length (and therefore had no reason to be generous), he would not have accepted from them anything less than the full face value of the debt (from which we are to assume that the Farnan judgments plus cash boot were worth the full amount of the Barclay debt). Yet creditors may have any number of reasons for resigning themselves to less than full satisfaction of their loans, particularly where the prospects for total recovery seem modest. In that case, Pleasants has no basis for arguing that he paid more than his *pro rata* share of the face value of the debt. As this is the factual predicate for seeking contribution, his claim must fail.

Moreover, even if there was authority for Pleasants' general proposition, the joint debtors in this case did not make a single transfer to Parker in full satisfaction of the debt but instead negotiated separate partial releases of their personal obligations for different amounts of consideration. The three fragmented transactions do not necessarily demonstrate equivalence of values in the aggregate. Pleasants paid $323,641 and assigned his share of the Farnan judgment in satisfaction of *his* share of the debt. In short succession, Shaffner and Locke did the same, though for different

amounts. A creditor is free to squeeze each debtor for as much as he can get; any resulting imbalances may simply reflect different bargaining strengths. An obvious way to avoid such inequities would be to join all parties in a single civil action, rather than each joint obligor negotiating with the creditor in a piecemeal fashion. Appellant, as well as any of the other principals to these transactions, could have taken such a course. Having failed to do so, Pleasants must now suffer the consequences of settling separately for more than his fellow debtors did. Because he did not even allege that the Farnan judgments or the debt to Parker had ascertainable values, Pleasants has failed to establish that he paid more than his share of the debt. Absent any reason to treat these releases as a single transaction, the district court correctly granted summary judgment to Locke.

### III. Conclusion

Pleasants failed to allege any facts that would entitle him to contribution from Locke. The district court's order granting Locke summary judgment is

*Affirmed.*