In re WESLEY INDUSTRIES,
INC., Debtor.

Robert M. GALLOWAY, Plaintiff–
Appellant, Cross–Appellee,

v.

FIRST ALABAMA BANK, Defendant–
Appellee, Cross–Appellant,

Jack W. Boykin, Defendant.

No. 93–6648.

United States Court of Appeals,
Eleventh Circuit.

Sept. 8, 1994.

Robert M. Galloway, pro se.

Eileen W. Stockham, Collins, Galloway & Smith, Mobile, AL, for appellant.

Robert P. Reynolds, P.C., Huntsville, AL, for appellee.

Before BLACK and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

BARKETT, Circuit Judge:

Robert Galloway ("Trustee"), Trustee for Wesley Industries, Inc. ("Debtor"), appeals the district court's denial of his request to void and recover a transfer that Debtor made from its cash collateral account to First Alabama Bank ("First Alabama") between 90 days and one year prior to Debtor's filing for bankruptcy. First Alabama cross-appeals the lower court's decision granting the Trustee's request to void and recover transfers, or the proceeds of transfers, of a real estate mortgage and of a security interest in various items of personal property including machinery, equipment, and inventory, that Debtor also conveyed to First Alabama between 90 days and one year prior to bankruptcy.

We affirm the district court's decision to void and permit recovery of the transfers, or proceeds therefrom, of the real estate mortgage and of the security interest. We also affirm the decision denying the recovery of the transfer from the Debtor's cash collateral account.

## I.

In 1986, approximately four years prior to filing for bankruptcy, Debtor, a corporation producing agricultural chemicals, established a lending relationship with First Alabama. First Alabama provided Debtor with working capital loans, which Debtor secured with inventory and accounts receivable. The security agreement provisions of various draw notes that Debtor executed and delivered to First Alabama governed the loans.

On May 25, 1989, the parties renewed and consolidated four draw notes into a Consolidated Note. Concurrent with the execution of the Consolidated Note, Debtor granted First Alabama additional security in the form of a security interest in machinery, equipment, furniture, fixtures, office equipment, raw materials, finished goods, work-in-process, goods in transit, licenses, distribution

rights, patents, copyrights, trade secrets, cash and all books, records and computer software evidencing the property. Debtor also granted First Alabama a mortgage upon real property in Talladega County, Alabama.

In conjunction with the Consolidated Note, Debtor established a revolving line of credit cash collateral account. Debtor deposited all proceeds it collected from accounts receivable into this cash collateral account, and from it made payments to First Alabama of principal and interest on the Consolidated Note.

On February 21, 1990, Debtor filed a voluntary Chapter 11 bankruptcy petition and the Bankruptcy Court for the Southern District of Alabama granted relief. On October 23, 1990, the bankruptcy court ordered the case converted to a Chapter 7 proceeding, naming appellant Galloway as Trustee. This adversary proceeding arises from the Trustee's attempt to recover the three transfers that Debtor made to First Alabama between 90 days and one year prior to filing its Chapter 11 petition: (1) the additional security; (2) the mortgage upon Debtor's real property in Talladega County, Alabama; and (3) the payments from Debtor's cash collateral account.

## II.

■ Pursuant to 11 U.S.C. § 547(b), a trustee may recover payments made within the 90 days preceding the filing of a bankruptcy petition. This provision allows a trustee to avoid any improper tactics that debtors and preferred creditors may employ in anticipation of a bankruptcy filing. Section 547(b)(4)(B) extends this 90–day window to a full year where the payment is to or for the benefit of an insider. All of the transfers involved in this appeal occurred more than 90 days but within one year before the filing of the bankruptcy petition. Thus, pursuant to § 547(b)(4)(B), to be subject to the avoidance powers of the Trustee, the Debtor must have made the transfers to or for the benefit of a creditor who was an insider at the time of the transfer.[1]

---

1.  11 U.S.C. § 547(b) provides in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

Although First Alabama, the transferee in this instance, was not an insider, the transfers indirectly benefitted insider Jack Boykin, Debtor's president, director and majority stockholder,[2] who personally guaranteed First Alabama's loans to the Debtor. Thus, we initially must decide whether transfers to non-insider creditors that benefit insider-guarantors extend the preference period from 90 days to one year pursuant to 11 U.S.C. § 547(b)(4)(B). This is a question of first impression in this circuit.

In *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1989), the Seventh Circuit became the first court of appeals to address the one-year reachback period of § 547(b)(4)(B) in the context of an insider-guarantor. In *Levit*, commonly referred to as *Deprizio*, a trustee filed adversary proceedings against various creditors—none of whom were insiders of the debtor—seeking to recover payments that the debtor made within one year, but more than 90 days before filing for bankruptcy. The court reasoned that although the creditors were not themselves insiders, the payments that debtor made to these "outside" creditors were *for the benefit of* guarantors of the loans who were insiders of the debtor. The payments benefitted the insiders because every dollar the debtor paid to an outside creditor reduced the insiders' exposure by the same amount.

> (1) to or for the benefit of a creditor;
>
> . . . . .
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider. . . .

**2.** The parties do not dispute that Jack Boykin was an insider of the Debtor. Under the Code, where the debtor is a corporation, an "insider" includes the director of the debtor or an officer of the debtor. 11 U.S.C. § 101(31)(B)(i)–(ii).

**3.** See *Official Unsecured Creditors Committee of Sufolla, Inc. v. U.S. National Bank of Oregon (In re Sufolla, Inc.)*, 2 F.3d 977, 986 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.)*, 993 F.2d 117, 120

■ Following *Deprizio*, all other courts of appeals that have decided this issue have agreed with the Seventh Circuit's analysis, concluding that insider-guarantors are creditors of the debtor because they hold contingent claims against the debtor that become fixed when they pay the outsider-creditors whose claims they guarantee.[3] Thus, these courts have held that trustees may recover transfers that a debtor makes to a non-insider creditor between 90 days and one year prior to filing for bankruptcy where such transfers benefit an insider-guarantor.

We are persuaded by this reasoning and likewise hold that the preference-recovery period is one year when the transfer produces a benefit for an inside creditor who is a guarantor. Thus, we reject First Alabama's argument on cross-appeal that Boykin, as guarantor, is not a creditor, and affirm the district court's decision voiding the real estate and security interest transfers.

### III.

■ Having adopted the *Deprizio* rationale, we likewise find that the district court correctly decided that the transfer from the cash collateral account was subject to the Trustee's avoidance power. This resolution, however, is not dispositive as to this transfer, because notwithstanding that it occurred during the applicable avoidance period, First Alabama asserts two defenses provided un-

(5th Cir.1993); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 1495 (6th Cir.1990); *Lowrey v. First National Bank of Bethany (In re Robinson Brothers Drilling, Inc.)*, 97 B.R. 77, 82 (W.D.Okla.1988), *aff'd, Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.)*, 892 F.2d 850 (10th Cir.1989).

See also *Travelers Insurance Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Services, Inc.)*, 980 F.2d 792, 799 (1st Cir.1992) ("for present purposes, we assume, without deciding, that *Deprizio* correctly interprets the legislative directives to be applied to the present claim"); *Harman v. First American Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 483 n. 2 (4th Cir.1992) ("The 'insider preference' theory was formulated by the Seventh Circuit in the so-called *Deprizio* case and has become very controversial. We decline to comment on the viability of the theory") (citations omitted).

der 11 U.S.C. § 547(c): the "ordinary course of business exception," *id.* § 547(c)(2); and the "floating lien exception," *id.* § 547(c)(5). Neither the bankruptcy court nor district court addressed whether § 547(c)(2) provides a defense in this instance because they granted relief under § 547(c)(5). Because we affirm the resolution of this matter under § 547(c)(5), we likewise find it unnecessary to address § 547(c)(2). Section 547(c)(5) provides in pertinent part:

> (c) The trustee may not avoid under this section a transfer—

> (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

> (A) . . .

> (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition. . . .

■ The Bankruptcy Reform Act of 1978 ("the Act") established that a lender's perfected security interest in property later acquired independently by the debtor might not be insulated from preferential attack.[4] Section 547(c)(5) of the Act carves out an exception for inventory or accounts receivable that protects the transfer of a security interest in after-acquired property, i.e., a "floating lien," provided that the creditor does not improve its position within the vulnerable period prior to bankruptcy. This exception:

> permits a creditor with, say, a 'floating lien' on the 'receivables' of such a company to maintain that lien as the specific accounts receivable are paid off, and replaced by new ones, without fear that a future bankruptcy trustee will mount a preference attack on new accounts receivable arising during the 'preference' period. . . .

Insofar as the grant of a security interest in the new collateral (receivables or inventory that comes into existence during the preference period) *improves* the creditor's position (compared to his position at the beginning of the preference period), the grant of security constitutes a preference to the extent of the improvement.

*Braunstein v. Karger (In re Melon Produce, Inc.),* 976 F.2d 71, 75 (1st Cir.1992) (citation omitted). The bankruptcy judge recognized that the secured transaction at issue in this case was a "floating lien." We adopt this determination and now apply the "improvement in position" test.

■ To determine whether a creditor improves its position, the factfinder must compare the amount of debt outstanding to the value of collateral securing the debt (i.e., inventory and accounts receivable) at the beginning and end of the appropriate preference period. *Roemelmeyer v. Walter E. Heller & Co., Southeast, Inc. (In re Lackow Bros., Inc.),* 752 F.2d 1529, 1531–32 (11th Cir.1985). At each point in time, the difference between debt outstanding and collateral is deemed a "deficiency." There is no "improvement in position" so long as the deficiency at the beginning of the preference period is equal to or smaller than the deficiency at the end of the preference period.

■ If on February 21, 1989 (the date one year prior to Debtor's filing for bankruptcy), the amount of First Alabama's deficiency was greater than it was on the date of filing, the Trustee could recover the payments Debtor made from its cash collateral fund to First Alabama. If, however, the amount of the deficiency was smaller, reflecting no relative improvement in position, then § 547(c)(5) provides First Alabama with a complete defense to the Trustee's attempt to avoid the cash collateral transfers.

■ The bankruptcy judge applied the "improvement in position" test by calculating the deficiency at the two relevant points in time. The bankruptcy court found that on February 21, 1989, First Alabama's collateral was valued at $363,048, securing an obligation of $1,300,000. The court determined

---

**4.** Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978).

the deficiency on that date to be $936,952. The court then looked to the date the Debtor filed the bankruptcy petition and found that on February 21, 1990, First Alabama's collateral was valued at $70,442, securing an obligation of $1,034,815 and resulting in a $964,-373 deficiency. Applying the "improvement in position" test, the bankruptcy judge found an increase in the amount of the deficiency between the two relevant points in time.

> It is clear from these numbers that First Alabama did not improve its position with regard to the cash collateral account during the one year immediately preceding the Chapter 11 filing to the prejudice of the debtor's unsecured creditors. The amount by which the debt exceeded the value of the collateral increased rather than decreased during this time....

Bankruptcy Opinion at 10.

Discovering no error in the factual findings of the lower courts, and no abuse of discretion, we affirm the judgment of the district court in its entirety.

AFFIRMED.