In re PSYCHOTHERAPY AND COUNSELING CENTER, INC., Debtor.

PSYCHOTHERAPY AND COUNSELING CENTER, INC., Plaintiff,

v.

Donna SHALALA, Secretary Dept. of Health and Human Services, Defendant.

Bankruptcy No. 94–005.
Adv. No. 95–53.

United States Bankruptcy Court, District of Columbia.

May 15, 1996.

---

14. It is not clear what the impact of 11 U.S.C. § 525(a) would be on a waiver between HHS and the debtor, even if it were explicit.

William Douglas White, Filippo Zucchi, Lepon, McCarthy, White & Holzworth, Washington, DC, for Plaintiff.

Stacey M. Ludwig, Asst. U.S. Atty., Washington, DC, for Defendant.

## DECISION ON MOTION TO DISMISS

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This matter is before the court on the motion to dismiss filed by the defendant, Donna Shalala, Secretary of the Department of Health and Human Services ("HHS"). For reasons explained below, the motion to dismiss will be denied.

The claim which HHS moves to dismiss is a preference claim under 11 U.S.C. §§ 547 and 550 by Psychotherapy and Counseling Center, Inc. ("debtor"), which is asserted in reliance upon the *Deprizio* doctrine. *See Levit v. Ingersoll Rand Financial Corp. (In re Deprizio Construction Co.),* 874 F.2d 1186 (7th Cir.1989).

*Deprizio* was the first court of appeals decision to adopt the interpretation of §§ 547 and 550 permitting the recovery from a non-insider transferee of preferential transfers which benefit insider guarantors even if the transfers occurred between one year and 90 days before the petition date. Subsequent to

*Deprizio* being decided, five other courts of appeals have addressed the issue and unanimously followed *Deprizio. See In re Wesley Industries, Inc.,* 30 F.3d 1438 (11th Cir. 1994); *In re Sufolla, Inc.,* 2 F.3d 977 (9th Cir.1993); *In re Southmark Corp.,* 993 F.2d 117 (5th Cir.1993); *In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990); *In re Robinson Brothers Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989); *see also In re Erin Servs. Inc.,* 980 F.2d 792, 798 (1st Cir.1992) (adopting *Deprizio* doctrine in dicta). And although the Court of Appeals for the District of Columbia Circuit has not addressed this issue, this court did adopt and apply the *Deprizio* doctrine. *See Albert v. Ford Motor Credit Corp. (In re Northeast Ford, Inc.),* Adversary Proceeding No. 92–10 (Bankr. D.D.C. Mar. 19, 1992) (unpublished).

Based on the undisputed facts, the *Deprizio* doctrine would appear to apply to this case. On January 16, 1992, HHS entered into a settlement agreement with the debtor and Edwina C. Morrison, the debtor's president, to resolve both parties' potential liability under the civil False Claims Act, 31 U.S.C. §§ 3729–3733, as well as other civil common law violations. The terms of the agreement provided, in relevant part, that the debtor and Morrison would jointly execute a promissory note for $145,000. The note provided for four yearly installment payments of $36,250 each, with payment beginning December 1, 1992. The debtor and Morrison defaulted on the first installment due on December 1, 1992. However, subsequently, the debtor made two payments to HHS of $18,125 each on January 21, 1995, and February 19, 1993. The debtor filed its chapter 11 petition on January 5, 1994, within one year of the two payments. The debtor now seeks to avoid and recover from HHS under *Deprizio* these two payments totaling $36,250, alleging that they were for the benefit of Morrison, an undisputed insider of the debtor.

In its motion to dismiss, HHS urges the court to reject the strong authority in support of the *Deprizio* doctrine in light of the amendment to § 550 in the recent Bankruptcy Reform Act of 1994 which purports to legislatively overrule the *Deprizio* line of cases. In the alternative, HHS argues that

the insider, Morrison, is not a creditor of the estate as required by § 547(b)(1).

## I

The court turns first to consider the effect of the recent amendment to § 550 and the accompanying legislative history. Section 550 was amended to include a new subsection (c) which provides that insider transferees have no liability for preference transfers made for the benefit of insiders during the period of ninety days and one year prior to the filing of the bankruptcy petition.[1] Although conceding that the amendment does not have retroactive application,[2] HHS argues that this court should apply the present version of § 550 of the Code to this adversary proceeding and reject *Deprizio* because the legislative history to the 1994 Act states that the amendment to § 550 is a clarification rather than a change in the law.

Specifically, Senator Grassley, a sponsor of the Act, observed in his floor statement:

Several recent court decisions, beginning with [*Deprizio*], have allowed trustees to recapture payments made to non-insider creditors a full year prior to the bankruptcy filing, if an insider benefits from the transfer in some way. Although the creditor is not an insider in these cases, the courts have reasoned that because the repayment benefited a corporate insider (namely the officer who signed the guarantee), the non-insider transferee should be liable for returning the transfer to the bankrupt estate as if the transferee were an insider as well.

Our legislation overrules the Deprizio line of decisions and clarifies congressional intent that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90–day statutory period. Our aim is to encourage commercial lenders and landlords to extend credit to smaller business entities. 140 Cong.Rec. S14461 (daily ed. Oct. 6, 1994).[3]

The few other courts considering the impact of the 1994 amendment to § 550 and the accompanying legislative history on the application of the *Deprizio* doctrine to cases pending during the amendment have not accorded it much weight. Two bankruptcy courts located in the Eleventh and Sixth Circuits, circuits which had already adopted the *Deprizio* doctrine prior to the amendment,[4] applied the doctrine to cases pending during the amendment, reasoning that absent retroactive legislation the courts were bound by the higher court rulings. *See In re Air Forwarding Systems, Inc.*, 176 B.R. 638 (Bankr.M.D.Fla.1995); *In re Blevins Elec., Inc.*, 185 B.R. 250, 258–59 (Bankr.E.D.Tenn. 1995). Similarly, the majority of courts that have considered the issue in circuits without higher court rulings have also applied the doctrine to cases pending during the amendment. *See In re Arthur F. Hazen & Co., Inc.*, 184 B.R. 233, 236–37 (Bankr.W.D.Pa. 1995); *In re Hoffman Assocs., Inc.*, 179 B.R. 797, 799 (Bankr.D.S.C.1995); *In re Northeastern Contracting Co., Inc.*, 182 B.R. 673 (Bankr.D.Conn.1995). Pointing out that the amendment is not retroactive and dismissing the significance of the legislative history, these courts choose to follow the weight of authority in other circuits and similar lower court rulings in their own circuits in holding that the *Deprizio* doctrine is the correct interpretation of the plain meaning of the statute prior to the amendment. *See, e.g., In re*

---

**1.** The new subsection (c) states:

(c) If a transfer made between 90 days and one year before the filing of the petition—
(1) is avoided under section 547(b) of this title; and
(2) was made for the benefit of a creditor that at the time of such transfer was an insider, the trustee may not recover under subsection (a) from a transferee that is not an insider.

**2.** The 1994 Act became effective on October 22, 1994, over nine months after the petition in this case was filed. With the exception of specifically identified sections, section 702 of the Act directed that the Act would not apply to cases commenced under title 11 before the effective date of the Act.

**3.** A similar statement appears in the section by section analysis that Representative Brooks, a sponsor of the Act, inserted into his floor statement appearing at 140 Cong.Rec. H10764 (daily ed. Oct. 4, 1994).

**4.** *See In re Wesley Industries, Inc.,* 30 F.3d 1438 (11th Cir.1994) and *In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990).

540

*Arthur F. Hazen & Co., Inc.,* 184 B.R. at 236–37.

Three courts have declined to apply the *Deprizio* doctrine to cases pending during the amendment. *See In re Artha Management, Inc.,* 174 B.R. 671, 677 (Bankr. S.D.N.Y.1994); *In re Wedtech Corp.,* 187 B.R. 105 (S.D.N.Y.1995); *In re Conner Home Sales Corp.,* 1995 WL 811932 (Bankr. E.D.N.C.1995). Two of these courts, *Artha* and *Wedtech,* use the recent amendment to buttress their already held position that *Deprizio* was wrongly decided. The third court, *Conner,* reasons that the legislative history is the best way to resolve the difference of opinion existing on this issue in the Fourth Circuit.

There being no higher court ruling on *Deprizio* in this circuit, the court must determine whether the arguably clarifying nature of the amendment militates in favor of a change in its prior expressed support of *Deprizio.*

### A

■ The views of subsequent Congresses concerning the intent of the enacting Congress are entitled to significant weight if the meaning and intent of the statute are ambiguous. *Seatrain Shipbuilding Co. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813–14, 63 L.Ed.2d 36 (1980); *In re Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n,* 804 F.2d 1487 (9th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). Evidence of such ambiguity would be a split in the circuits regarding interpretation. *See In re Dooley Plastic Co., Inc.,* 182 B.R. 73, 80 (D.Mass.1994) (addressing effect of amendment to 28 U.S.C. § 157 concerning bankruptcy court's jurisdiction over jury trials); *In re Dryland Marina, Inc.,* 180 B.R. 487, 489–91 (Bankr.W.D.Mich. 1995) (addressing effect of amendment to 11 U.S.C. § 546(a)(1) concerning statute of limitations applicable to trustees).

■ However, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *See United States v. Price,* 361 U.S. 304, 313, 80 S.Ct.

326, 331, 4 L.Ed.2d 334 (1960). Thus, absent ambiguity, the court's duty is to enforce the plain meaning of the statute. *See Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 531, 116 L.Ed.2d 514, 522 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not sufficient reason for refusing to give effect to its plain meaning. [*Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) ]"); *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978) ("Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end").

■ Turning to consider § 550, the court concludes that there is no necessity and, indeed, no support for turning to the 1994 amendment and the accompanying legislative history to "clarify" the meaning of the statute. The meaning and intent of the pre-amended language of § 550 in conjunction with § 547 was not ambiguous. The plain meaning of the statute clearly supported the Seventh Circuit's decision in *Deprizio.* Furthermore, there was no split in the circuits on this point. All five circuits subsequently considering the issue unanimously adopted the holding and reasoning of *Deprizio* based on the plain meaning of the statute. Conversely, the lower courts[5] (non-Circuit courts) rejecting *Deprizio* ruled on policy considerations that run afoul of the Supreme Court's ruling in *Wolas.*

### B

Moreover, as stated in *Mason v. Fifth Third Bank,* 1996 WL 89351 (Bankr. N.D.Ohio 1996), "Congressional intent regarding the retroactive application of a statute, when it is clear, governs. *Kaiser Aluminum & Chemical Corporation v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990)." This court agrees with the court in *Mason* that Congress made clear in § 702(a) of the Bankruptcy Reform Act of 1994 which provisions

**5.** *See, e.g., In re Wedtech Corp.,* 187 B.R. 105 (S.D.N.Y.1995) and cases cited therein.

of the Act it wished to have retroactive effect. The amendments to § 550 of the Bankruptcy Code were not among them.

## C

■ As observed in *In re DG Acquisition Corp.*, 188 B.R. 918, 923 (D.Del.1995), "Subsequent legislative history is not controlling on a court, since it is the function of the courts and not the Legislature to interpret an enacted statute. *Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988)." Although the court can give some weight to the 1994 legislative report language in interpreting the language of section 547, the legislative report is neither binding nor of substantial weight.

## D

■ By amending the statute here the way it did, Congress plainly recognized the old statute compelled a different result. The trustee's recovery power under § 550 acts as the remedy to recover transfers determined to be preferential or avoidable under § 547. It is under § 547 that the expanded insider preference period is made applicable to non-insiders. Specifically, payments made to a non-insider "for the benefit of" an insider creditor may be avoided by the trustee if made "between ninety days and one year before the date of the filing of the petition. . . ." A transfer found to be avoidable under § 547, however, may only be recovered under § 550. Congress did not amend § 547 as part of the 1994 Act. Hence, the above described transfer would still be avoidable under § 547, as the amended language in § 550(c)(1) recognizes. The effect of the amendment of § 550, is to prevent the trustee from recovering the transfer from the non-insider, despite the fact that it is avoidable under § 547. Accordingly, it is clear that in amending § 550 Congress recognized that the plain meaning of § 547 directed that the extended avoidance period for insiders is applicable to transfers to non-insiders and that as § 550 was originally written such an avoidable transfer could be recovered from the non-insider. So, § 550 was amended to prevent the recovery of such transfers from non-insiders.

■ The supposedly "clarifying" legislative history is thus itself ambiguous. The legislative history states that by amending § 550 Congress intends to clarify its "intent that non-insider transferees should not be subject to the preference provisions of the Bankruptcy Code beyond the 90–day statutory period." However, as the discussion above demonstrates, in amending § 550 Congress did nothing to change the language in § 547 making non-insider transferees subject to the extended preference period. Despite the report's stated intent, as the amended statute reads now, such transfers will still be avoidable under § 547. The only change will be that the transfers will not be recoverable from non-insiders under § 550. The court declines to alter the plain meaning of the original statute based on the ambiguous legislative history of a non-retroactive amendment.[6]

## E

Finally, at oral argument HHS placed particular emphasis on the Supreme Court's decision in *Red Lion Broadcasting Co. v. Federal Communications Commission,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). *Red Lion* is totally inapposite. In *Red Lion,* a radio station carried a broadcast in 1964 which criticized Fred J. Cooke. The FCC held that the broadcast constituted a personal attack under its fairness doctrine, thus requiring that reply time be made available to Cook. The FCC soon thereafter adopted specific regulations regarding the personal attack aspect of the fairness doctrine. The Court upheld the FCC's action against the radio station and its promulgation of the regulations as consistent with its statutory authority.

In so holding, the Court looked to the FCC's long-standing administrative construction of its statutory mandate to assure that broadcasters operate in the public interest. The Court additionally looked to a subse-

---

6. The court does not address the completely different issue whether for prospective cases the trustee's avoidance power under § 547 can be limited because Congress obviously blundered in amending § 550 instead of going to the heart of the problem and amending § 547 itself.

quent statutory amendment in 1959, in which Congress expressly referred to "the obligation imposed upon [broadcasters] under the Act to operate in the public interest and to afford reasonable opportunity for the discussion of conflicting views on issues of public importance." The Court concluded that "the amendment vindicated the FCC's view that the fairness doctrine inhered in the public interest standard." *Red Lion,* 395 U.S. at 380, 89 S.Ct. at 1801. It was in this context that the Court observed that:

> Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction ... Here, the Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation.

*Id.* at 381–82, 89 S.Ct. at 1802 (citations omitted).

Thus, *Red Lion* neither dealt with legislation overturning a prior construction of a statute nor dealt with an attempt to use the statutory amendment to address a cause of action to which the amendment was expressly made non-retroactive. Rather, it dealt with a statute expressly providing what inhered in a prior statute and the effect of that amendment on events *after* the amendment. For these reasons the court finds the holding of *Red Lion* inapplicable to these facts.

■ Accordingly, the court will apply the *Deprizio* doctrine in this case.

## II

■ Finally, the court turns to consider HHS's alternative grounds for dismissal. HHS argues that even if the court decides to apply the *Deprizio* doctrine, it would not be applicable here because the insider, Morrison, is not a creditor of the estate as required by § 547(b)(1). HHS argues that under § 101(10) in order to be a creditor, Morrison's claim would have to have arisen on or before the order for relief. HHS argues that under District of Columbia law as a co-maker of the note Morrison would have no claim against the debtor unless and until Morrison paid out more than her fair share of the note, which she clearly has not done.

*See Pleasants v. Locke,* 924 F.2d 1144, 1146 (D.C.Cir.1991). HHS further argues that under the terms of this note, HHS was required to pursue the debtor for payment before it could pursue Morrison. HHS contends that because its claim against the debtor has not yet been allowed, no liability has arisen against Morrison under the terms of the note. Thus, HHS argues that because Morrison's claims against the debtor had not arisen at petition, she is not a creditor for purposes of § 547(b)(1).

The debtor disputes HHS's analysis, arguing that even though Morrison is not presently entitled to payment, she still possesses a contingent claim for contribution that will ripen in the event she pays more than her fair share and HHS's claim against the debtor is resolved in the bankruptcy. The debtor argues that Morrison's contingent contribution claim arose prepetition at the time the note was entered into and would fall well within the broad definition of claim under § 101(5)(A), thus qualifying her as a creditor under § 101(10)(A). The debtor argues that *Pleasants v. Locke,* 924 F.2d 1144, 1146 (D.C.Cir.1991), cited by HHS is inapposite because that case dealt with when a claim for contribution is enforceable, rather than when it arises, which is the relevant inquiry here. According to the cases cited by the debtor, under District of Columbia law a claim for contribution among parties to a common debt arises when the two parties become jointly liable to a third party. *See Bair v. Bryant,* 96 A.2d 508, 510 (D.C.1953) ("the right to contribution is a contingent right. It arises from a joint liability but is enforceable only after the one seeking it has been forced to pay").

The court rejects HHS's argument in favor of the debtor's reasoning. The court concludes that Morrison's contingent contribution claim arose when Morrison co-signed the note with the debtor prepetition and is sufficient to qualify as a claim under § 101(5)(A) in order to qualify her as a creditor under § 101(10)(A). Although some of the cases cited by the parties describe a contribution claim as "arising" only when one has paid more than his fair share, this is for purposes of determining when an action matures or is

actionable in state court. *See Ottenstein v. Julius Garfinckel & Co.*, 151 A.2d 925, 927 (D.C.1959).

Under § 101(5)(A), a claim arises for bankruptcy purposes when the contingent liability is established, which in this case was when the note was first entered into. *See In re Bonnett,* 158 B.R. 125, 127 (Bankr.C.D.Ill. 1993) (contingent claim is a claim that has not yet accrued and that is dependent upon some future event that may never happen). Any additional requirement imposed by the note that HHS first pursue the debtor for payment before pursuing Morrison does not change this analysis. Such a requirement merely stands as a further contingency before Morrison will have a matured claim, which does not change the fact that for bankruptcy purposes she holds a contingent claim against the estate and is thus a creditor.

## CONCLUSION

For all these reasons, HHS's motion to dismiss will be denied. An appropriate order will follow.